UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRUSTEES OF THE BUILDING SERVICE 32BJ HEALTH FUND, MASSACHUSETTS SERVICE EMPLOYEES PENSION FUND, SEIU NEW ENGLAND PROPERTY SERVICES TRAINING FUND, and BUILDING SERVICE 32BJ LEGAL SERVICES FUND,

Plaintiffs,

v.

VANGUARD GENERAL SERVICES CORPORATION, VANGUARD PARKING SERVICES, INC., LONG BAY SERVICES, INC., ERNEST E. WASHINGTON, JR.,

Defendants.

24-CV-7753 (RA)

OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

Before the Court is a motion brought by Defendants Vanguard Parking Services, Inc. ("Vanguard 2" or "Vanguard Parking"), Long Bay Services, Inc. ("Long Bay"), and Ernest E. Washington, Jr. (together, the "Moving Defendants") to vacate the previously entered default judgment in this matter pursuant to Federal Rule of Civil Procedure 60(b). The Court finds that the Moving Defendants' default was not willful, that they have presented evidence of facts that, if proven at trial, would constitute a complete defense to Plaintiffs' claims, and that Plaintiffs will not be prejudiced by vacatur. Consistent with the Second Circuit's stated preference for resolving disputes on the merits, the instant motion is granted.

## BACKGROUND[1]

Plaintiffs ("the Funds") are the trustees of a set of "jointly-administered, multi-employer, labor-management trust funds." Dkt. 33 ("Am. Compl.") ¶ 4. Defendants Vanguard General Services Corporation ("Vanguard 1" or "Vanguard General"), Vanguard Parking, and Long Bay are Massachusetts corporations. *Id.* ¶¶ 6–7, 9. Defendant Ernest E. Washington, Jr. is the "owner, sole officer and director of both Vanguard 1 and Vanguard 2" and is "an officer and/or director of Long Bay." *Id.* ¶¶ 8–9.

Vanguard General has entered into "a series of collective bargaining agreements" with the non-party Service Employees International Union, Local 32BJ ("the Union"), pursuant to which it is obligated to "make benefit contributions to the Funds on behalf of all employees covered" by the collective bargaining agreements. *Id.* ¶ 10. It is also obligated to follow certain "Declarations of Trust and collections policies," pursuant to which Vanguard General must "fully comply with payroll compliance audits." *Id.*

The Funds allege that Vanguard General has failed to make the required benefit contributions. *Id.* ¶ 53. The parties proceeded to arbitration on this issue. *Id.* ¶ 15. In that proceeding, the arbitrator "issued an Award in favor of the Funds in full, and ordered payment to the Funds of $409,811.62." *Id.* ¶ 16. After Vanguard General failed to satisfy the award, the Funds filed a petition to confirm it in New York state court. *Id.* ¶ 20.[2] Vanguard General represented to the Funds that it was "out of business and no longer in operation." *Id.* ¶ 17. The Funds allege, however, that Vanguard Parking, an operating business, is the "alter-ego" of

---

[1] This Opinion and Order "draws its facts from Plaintiff[s' Amended] Complaint, the well-pleaded allegations of which are taken as true" for the purposes of ruling on the Moving Defendants' motion to vacate the default judgment. *Newman v. ASA Coll., Inc.*, 2026 WL 1133663, at *1 n.1 (S.D.N.Y. Apr. 27, 2026). The Court also considers and relies on the various declarations and affidavits submitted in connection with the briefing on the instant motion. *Id.*

[2] The parties appear to agree that this award was confirmed on March 19, 2025, though this fact was not pled in the Amended Complaint. Dkt. 83 ("Def. Br.") at 5; Dkt. 93 ("Pl. Opp'n") at 7.

Vanguard General and that the two entities "act[] as a single integrated enterprise" and together constitute a "single employer." Am. Compl. ¶¶ 20–38. The Funds further allege that Vanguard Parking and Vanguard General "are also a single integrated enterprise with Long Bay" and are all "part of a single unit operating under hybrids of their names." Am. Compl. ¶¶ 41–44.[3]

Accordingly, the Funds now bring claims under the Employee Retirement Income Security Act of 1974 ("ERISA") and state contract law against Vanguard General, Vanguard Parking, and Long Bay, alleging that they are jointly liable for unpaid contributions from January 1, 2017, to the present, on single-employer and alter-ego theories. *Id.* ¶¶ 46–62.[4] The Funds further allege that Defendant Washington is also jointly liable under an alter-ego theory. *Id.* ¶¶ 75–78. They bring additional claims for injunctive relief seeking to require Defendants to comply with the Funds' demand for a payroll audit, to recover fees and costs associated with performing that audit, and to obtain a judgment "ordering Defendants to make prompt payment" of any "principal, interest, and damages" associated with unpaid contributions uncovered as a result of this audit. *Id.* ¶¶ 63–74.

On December 3, 2024, the Clerk of Court issued a certificate of default as to Vanguard General, Vanguard Parking, and Washington. *See* Dkts. 23–25. About a week later, on December 12, 2024, the Funds filed an Amended Complaint as of right, as no Defendant had yet filed a responsive pleading, adding Long Bay as a defendant. *See* Dkt. 33. On January 29, 2025, after each Defendant failed to file a responsive pleading, the Clerk of Court issued new certificates of default as to all four. *See* Dkts. 54–55, 59–60. The Funds then filed a motion for default judgment

[3] Specifically, the Funds allege that the three entities "are each signatories to . . . the most recent Agreement with the Union," holding themselves out as "Vanguard General Services Corp. Long Bay Services." Am. Compl. ¶ 42. They also allege that the three entities "enter into contracts, and perform work under such contracts, for building service work covered by the Agreements, under the hybrid name 'Long Bay Services Inc./Vanguard General Services, Corp.'" *Id.* ¶ 43.

[4] The Funds appear to seek a judgment that Defendants are jointly liable for "debts arising under the arbitration award," as well as any new debts arising after the period at issue in that arbitration. Pl. Opp'n at 17.

on April 2, 2025. Dkt. 63. After the Court held a show-cause hearing on June 6, 2025, it granted default judgment on June 17, 2025. Dkt. 78.

Over four months later, on October 22, 2025, counsel for the Moving Defendants appeared in this action and filed the instant motion to vacate the default judgment on behalf of Vanguard Parking, Long Bay, and Washington. Dkt. 82 ("Def. Mot."); Dkt. 83 ("Def. Br."). The Funds filed an opposition, Dkt. 93 ("Pl. Opp'n"), to which the Moving Defendants replied. Dkt. 98 ("Def. Repl.").

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 60(b), the Court, "[o]n motion and just terms," "may relieve a party . . . from a final judgment, order, or proceeding." Fed. R. Civ. P. 60(b).[5] Under Rule 60(b), a district court may vacate a default judgment for any of the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b); *see Vega v. Trinity Realty Corp.*, 2021 WL 738693, at *3 (S.D.N.Y. Feb. 24, 2021). The Second Circuit has clarified that, "[i]n deciding whether to relieve a party from a . . . default judgment," a district court's inquiry should be focused on three factors: "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Henry v. Oluwole*, 108 F.4th 45, 52 (2d Cir. 2024) (quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993)). The Court may further consider "[o]ther relevant equitable factors" such as "whether the failure to follow a rule of

[5] Unless otherwise indicated, quotations omit all internal citations, quotation marks, footnotes, and omissions, and adopt alterations.

procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." *Enron*, 10 F.3d at 96. "Of these factors, willfulness carries the most weight." *In re Orion HealthCorp, Inc.*, 95 F.4th 98, 104 (2d Cir. 2024).

The Second Circuit has cautioned that, "because defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Enron*, 10 F.3d at 96; *see also New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) (noting that "a default judgment is the most severe sanction which the court may apply"); *Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001) (articulating a strong "preference for resolving disputes on the merits"). Nevertheless, where, as here, a defendant seeks to set aside a "default judgment," rather than a "default," the Circuit has also noted that a district court should "apply the factors more rigorously" because "the concepts of finality and litigation repose are more deeply implicated" by setting aside a "final default judgment." *Henry*, 108 F.4th at 51–52; *cf. Byrnes v. Yeats Constr. Mgmt., Inc.*, 2017 WL 4045484, at *2 (S.D.N.Y. Sept. 11, 2017) (noting that "the criteria for vacating a default judgment pursuant to Rule 60 should" still "be construed generously" in the defaulting party's favor).

## DISCUSSION

### I. Willfulness

The parties first dispute whether the Moving Defendants' failure to respond to the Amended Complaint was willful. "[U]nder the willfulness factor, a showing that a default was inadvertent is sufficient but not necessary to vacate a default judgment." *Global Gold Mining, LLC v. Ayvazian*, 983 F. Supp. 2d 378, 387 (S.D.N.Y. 2013) (collecting cases). "[W]illfulness, in the context of a default, . . . refer[s] to conduct that is more than merely negligent or careless," and is instead "egregious" or "not satisfactorily explained." *SEC v. McNulty*, 137 F.3d 732, 738 (2d

Cir. 1998); *see Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996) (noting that the "willfulness standard" does not "include careless or negligent errors," and that even "grossly negligent" actions do not necessarily qualify). Put another way, "[a] default is considered willful when the defendant fails to answer a complaint without explanation or justification. . . . While a determination that the defendant acted in bad faith would support a finding of willfulness, it is sufficient that the defendant defaulted deliberately." *Manzanares v. Your Favorite Auto Repair & Diagnostic Ctr., Inc.*, 2020 WL 6390162, at *5 (E.D.N.Y. Nov. 2, 2020); *see McNulty*, 137 F.3d at 738–39; *Gucci Am., Inc. v. Gold Ctr. Jewelry*, 158 F.3d 631, 635 (2d Cir. 1998). By contrast, a "mere administrative or clerical error" is insufficient to support a finding of willfulness, *Am. Alliance Ins. Co.*, 92 F.3d at 61, as is "a mistake made in good faith," such as a "mistaken belief." *Swarna v. Al-Awadi*, 622 F.3d 123, 142 (2d Cir. 2010); *see Enron*, 10 F.3d at 96 (same).

Washington and Vanguard Parking explain the reasons for their default in a declaration. Washington states that he "first learned of this Action's existence on June 24, 2025," when Lisa Guscott, an "officer and director" of Long Bay, "informed [him] that she had received the Court's entry of default judgment via certified mail." Dkt. 85 ("Washington Decl.") ¶ 4. Washington states that, although he "had previously been served in this Action," he "mistakenly believed that the documents provided pertained to the underlying federal litigation and subsequent arbitration and state court action . . . from which this Action is derived." *Id.* ¶ 5. He further states that "the process server never explained the nature of this Action when he handed . . . [him] documents," and that he did not engage counsel to defend himself and Vanguard Parking in this action until June 27, 2025, three days after he learned about the default judgment. *Id.* ¶¶ 6, 8.

The Funds argue that this explanation fails to show that Washington and Vanguard Parking's default was not willful. Because "Washington and Vanguard Parking are not parties to

the New York Action"—only Vanguard General is—they observe that neither Washington nor Vanguard Parking was "served with any papers for that action in their own names." Pl. Opp'n at 9. The Funds contend that it is thus unconvincing that "Washington . . . was totally ignorant to the existence of" this "separate federal litigation against" himself and Vanguard Parking. *Id.* at 9–10. The Moving Defendants characterize Washington's conduct as an "innocent mistake," as they explain that "Washington, a 78-year-old layman, confused this Action with the Underlying Action, which, *inter alia*, sought the same damages against one of the same defendants (Vanguard General) in connection with the same Union contract arising from the same audit." Def. Repl. at 3. Further, it appears that Washington, as president of Vanguard General, had counsel advising him in the multiple underlying actions at issue in the instant matter; in those actions, Vanguard General was sued by the same plaintiffs, who were represented by the same counsel. *See* Pl. Opp'n at 9–10; Dkt. 84 ("Foster Decl.") ¶ 3. Counsel for Washington represents that "[a]lthough Plaintiffs' counsel knew that I served as counsel for Vanguard General and had been engaging with me throughout the Underlying Action, they never contacted me to inform me that they intended to bring this action," and in fact never contacted him about this action, either before or after they moved for a default judgment. Foster Decl. ¶¶ 4–7.[6]

As Judge Oetken has noted, "[c]ourts are particularly reluctant to find willfulness where a defaulting defendant was facing multiple suits regarding the same underlying dispute," *Ayvazian*, 983 F. Supp. 2d at 387, particularly where, as here, those actions overlap in "time[,] proximity[,] and subject matter." *Davis v. Musler*, 713 F.2d 907, 915 (2d Cir. 1983). This concern is

[6] The Court may consider "[o]ther relevant equitable factors" as part of this analysis. *Enron*, 10 F.3d at 96. The Funds' papers also demonstrate that they were in contact with counsel for Vanguard General about matters related to the underlying actions as late as July 2024. *See* Dkt. 94 ("Bloom Aff.") ¶¶ 6–7. The Funds moved for a certificate of default in December 2024. *See* Dkts. 19–21. The Court would have expected that, before moving for a certificate of default, counsel for the Funds would—as a matter of professional courtesy—have contacted the attorney who they knew represented Vanguard General in the underlying actions to ascertain whether it intended to appear in this action. The fact that they apparently did not do so weighs in favor of vacating the default judgment.

heightened where a defaulting defendant is not a frequent litigant. *Cf. Boston Post Rd. Med. Imaging, P.C. v. Allstate Ins. Co.*, 221 F.R.D. 410, 413 (S.D.N.Y. 2004) (refusing to credit defendant Allstate Insurance Company's position that it was "confused" about overlapping lawsuits because "[i]t is probably one of the most frequent litigants in the United States").

It is true that there are some inconsistencies in Washington's story. For example, as the Second Circuit has noted in a similar circumstance, it is not clear why Washington did not turn the documents he was served in this action over to his counsel, who was representing him in the underlying actions and would, presumably, be capable of identifying that these documents pertained to a separate action. *See Davis*, 713 F.2d at 915. On the other hand, Washington's decision to actively contest Plaintiffs' claims in this action—shortly after he said he learned of the default judgment entered against him and Vanguard Parking—lends strong support to a finding that this failure to appear was a mere "mistake made in good faith." *Swarna*, 622 F.3d at 142; *see, e.g.*, *Johnson v. N.Y. Univ.*, 324 F.R.D. 65, 70 (S.D.N.Y. 2018).

The Moving Defendants did not bring the instant motion until October 22, 2025, almost four months after they state they learned about the default judgment against them on June 23 and 24, 2025. Guscott Decl. ¶ 6; Washington Decl. ¶ 4. They explain, however, that they "immediately contacted Plaintiffs' counsel to discuss resolving this matter" after signing an engagement letter with their attorney on June 27, 2025. Foster Decl. ¶ 9. Those "settlement talks fell through," and the parties appear to have stipulated that the Funds would not "raise any such delays" resulting from these negotiations "in challenging" the instant motion. *Id.* ¶¶ 10–11. The Court finds, therefore, that although there was a four-month delay between the default judgment and the instant motion, it is adequately explained and thus does not weigh in favor of a finding of willfulness. *Cf. Lopez v. Mohammed*, 2017 WL 4277154, at *10 (E.D.N.Y. Sept. 26, 2017)

(finding willfulness where a defendant did not explain a two-month delay between learning about the default judgment and filing a motion to vacate); *Gonzaga Cortez v. Hang Lin*, 2019 WL 4256363, at *4 (S.D.N.Y. Sept. 9, 2019) (same, for a six-week delay).

Long Bay's justifications for its default are similar, though somewhat less compelling. Lisa Guscott, an "Officer and Director" of Long Bay, also states that she "first learned that this Action existed and that Long Bay had been named as a defendant" when she "received the Court's entry of default judgment via certified mail." Dkt. 86 ("Guscott Decl.") ¶ 4. Guscott explains that she "mistakenly believed that the documents provided to [her] pertained to an entirely separate legal matter which [she] ha[s] been engaged in since 2018." *Id.* ¶ 5. In her supplemental declaration, Guscott further states that she confused the instant case against Long Bay with litigation against another one of her "family's real estate management companies, Long Bay Management Company, Inc." Dkt. 98, Ex. 13 ("Suppl. Guscott Decl.") ¶¶ 17–18. As a result, she states that, as "a mere layperson with no knowledge of the legal system, [she] mistakenly believed that the legal documents served on [her] pertained to that ongoing action." *Id.* ¶ 18. Guscott does not further explain why she confused litigation against two separate entities, whether the subject matter of the instant litigation is similar to the litigation against Long Bay Management Company, or whether she provided the documents for this litigation to counsel for Long Bay Management Company. *See Ayvazian*, 983 F. Supp. 2d at 387; *Davis*, 713 F.2d at 915. Nevertheless, as with Washington and Vanguard Parking, Guscott's and Long Bay's decision to actively contest this litigation as soon as they learned of Long Bay's default, Guscott Decl. ¶ 7, also supports a finding that Long Bay's failure to appear was a "mistake made in good faith," and was therefore not willful. *Swarna*, 622 F.3d at 142.

On balance, "resolving doubt in favor of the defendant" given courts' "solicitude towards defendants facing just two suits," the Court finds that the default by Washington, Vanguard Parking, and Long Bay, though perhaps careless, was not "willful." *Ayvazian*, 983 F. Supp. 2d at 387. The conduct of the Moving Defendants, therefore, weighs in favor of vacating the default judgment.

## II. Prejudice

The Court next considers whether the Funds would be prejudiced by vacating the default judgment. The Funds argue that they will be prejudiced because they will be further "delayed in their ability to collect" the contributions at issue in this litigation. Pl. Opp'n at 19. But "[i]n considering whether a plaintiff would be prejudiced if an entry of default were vacated, the court must take into account more than mere delay or passage of time." *Lopez*, 2017 WL 4277154, at *11; *see Davis*, 713 F.2d at 916. Rather, a plaintiff must show that any prejudice "cannot be rectified in the Court in another manner were the default to be vacated." *Ayvazian*, 983 F. Supp. 2d at 387; *see also Murray Eng'g, P.C. v. Windermere Props. LLC*, 2013 WL 1809637, at *5 (S.D.N.Y. Apr. 30, 2013) (similar). Examples of such prejudice include "the loss of evidence," "increased difficulties of discovery," or "greater opportunity for fraud or collusion." *Davis*, 713 F.2d at 916. In other words, contrary to the argument made by the Funds, "delay standing alone does not establish prejudice." *Enron*, 10 F.3d at 98. The Funds identify no other reason why they would be prejudiced if the default judgment were to be vacated. Accordingly, this factor weighs in favor of vacatur.

## III. Meritorious Defenses

Finally, the Moving Defendants argue that they have seven meritorious defenses to the claims in this action. *See* Def. Br. at 15–25. "The test of such a defense is measured not by whether

there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Enron*, 10 F.3d at 98; *see also Am. Alliance Ins. Co.*, 92 F.3d at 61 ("A defense is meritorious if it is good at law so as to give the factfinder some determination to make."); *Green*, 420 F.3d at 109 ("In order to make a sufficient showing of a meritorious defense[,] the defendant need not establish his defense conclusively, but he must present evidence of facts that, if proven at trial, would constitute a complete defense."); *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015) (noting that a moving party must "support its general denials with some underlying facts"). This is a "low threshold." *Lu v. Nisen Sushi of Commack, LLC*, 2022 WL 4597436, at *2 (E.D.N.Y. Sept. 30, 2022).

As discussed above, the Funds bring claims under ERISA and state contract law for the payment of contributions due to them—in addition to further injunctive relief related to payroll audits—pursuant to collective bargaining agreements. Am. Compl. ¶¶ 46–54, 63–74. They argue that Vanguard Parking and Long Bay are directly liable on these claims but also advance alternative theories of liability. As to the ERISA claim, the Funds appear to assert that Vanguard Parking and Long Bay are jointly liable under federal alter-ego and single-employer theories. *Id.* ¶¶ 55–62. And as to the state-law contract claim, the Funds also appear to assert that these two defendants are jointly liable under a state-law alter-ego theory. *Id.* ¶¶ 59–62. Finally, they assert that Washington is liable for both claims under a state-law alter-ego theory. *Id.* ¶¶ 75–78.

The constellation of defenses raised by the Moving Defendants largely reduces to the following. They argue that Vanguard General, not Long Bay or Vanguard Parking, signed the collective bargaining agreements at issue in this case, and so neither Long Bay nor Vanguard Parking can be directly liable under those agreements. They further argue that the Funds'

alternative theories of liability fail. First, the Moving Defendants maintain that the "single employer" theory of liability fails because Vanguard General is "defunct and has no employees." Def. Repl. at 8. And second, they argue that the alter-ego theory of liability fails because it relies on "a complicated factual analysis" that will not be resolved in the Funds' favor. Def. Br. at 21.

These assertions, when taken together, would provide a "complete defense" to the Funds' claims. *Enron*, 10 F.3d at 98. The Moving Defendants, moreover, have adequately supported these denials with "some underlying facts." *Bricklayers & Allied Craftworkers*, 779 F.3d at 187. As to the theory of direct liability from breach, Washington avers that only Vanguard General and another separate entity, "Long Bay Services, Inc./Vanguard General Services Corporation" ("Long Bay/Vanguard"), are "parties and signatories to the agreements with the Union." Washington Decl. ¶ 12. The parties appear to dispute whether Long Bay/Vanguard exists as a separate entity from Long Bay, Vanguard Parking, or Vanguard General. But Washington claims that Long Bay/Vanguard and Vanguard General are separate entities from Vanguard Parking, and that Vanguard Parking has a separate federal tax identification number, files its own taxes, and has its own bank accounts. *Id.* ¶¶ 13–23. Guscott, likewise, states that "Long Bay/Vanguard . . . is a completely different corporate entity from either Vanguard General or Long Bay," and that Long Bay and Long Bay/Vanguard also have separate federal tax identification numbers, file separate taxes, and have separate bank accounts. Guscott Decl. ¶¶ 12–19. The existence of Long Bay/Vanguard as a separate entity—a question which appears to present a live issue of fact—would defeat the direct breach theory of liability for Long Bay and Vanguard Parking.

So too with the alter-ego and single-employer theories of liability. As discussed, the Funds seek to hold Vanguard Parking, Long Bay, and Washington liable for Vanguard General's obligations under an alter-ego theory of liability, arguing that Washington "exercises pervasive, if

not total, control" over Vanguard Parking and Vanguard General, and that all three entities are operated as a "single enterprise." *E.g.*, Am. Compl. ¶¶ 73, 76.

The federal alter-ego doctrine, as applied to disputes under the National Labor Relations Act and ERISA, "provide[s] an analytical hook to bind a non-signatory to a collective bargaining agreement."[7] *Ret. Plan of UNITE HERE Nat'l Ret. Fund v. Kombassan Holding A.S.*, 629 F.3d 282, 288 (2d Cir. 2010). "Determining that an entity is an alter ego signifies that, for all relevant purposes, the non-signatory is legally equivalent to the signatory and is itself a party to the collective bargaining agreement." *Id.* (quoting *Local Union No. 38, Sheet Metal Workers' Int'l Ass'n, AFL-CIO v. Custom Air Sys., Inc.*, 357 F.3d 266, 268 (2d Cir. 2004)). "The test of alter ego status is flexible, allowing courts to weigh the circumstances of the individual case, while recognizing that the following factors are important: whether the two enterprises have substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership." *Id.* (quoting *Goodman Piping Prods., Inc. v. NLRB*, 741 F.2d 10, 11 (2d Cir. 1984)). Alter-ego liability may be imposed even where the parties did not act with an intent "to evade the obligations of the collective bargaining agreement," and may be imposed on "parallel companies," in addition to "successor companies." *Id.* Here, as discussed above, Guscott and Washington have averred specific facts in their declarations that demonstrate that Vanguard General, Vanguard

[7] In their brief, the Moving Defendants appear to conflate the principles applicable to alter-ego theories of liability under state and federal corporate law. Def. Br. at 20–23. The Court understands the Funds to be advancing a federal-law alter-ego theory of liability as to Vanguard Parking and Long Bay as to the ERISA claim. Am. Compl. ¶¶ 55–62. As the Second Circuit has explained, "[t]o protect employee benefits" under ERISA, "courts observe a general *federal* policy of piercing the corporate veil when necessary." *Kombassan Holding A.S.*, 629 F.3d at 288 (emphasis added); *see Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1220–21 (2d Cir. 1987) (noting that federal-law veil-piercing to effect ERISA's "remedial purposes" "generally gives less deference to the corporate form than does the strict *alter ego* doctrine of state law"); *In re Port Morris Tile & Marble LP*, 645 B.R. 500, 519–20 (Bankr. S.D.N.Y. 2022) (distinguishing between veil-piercing under state law and ERISA). Nevertheless, to the extent the Funds seek to also advance a state-law theory of alter-ego liability for Vanguard Parking and Long Bay as to the contract claim, the Court finds that the Moving Defendants have also raised contested issues of fact as to whether that doctrine is applicable, as discussed below.

Parking, and Long Bay had separate operations and business purposes. *See* Washington Decl. ¶¶ 14–15 (stating that Vanguard Parking provides "parking services" while Vanguard General and Long Bay/Vanguard provide "cleaning and janitorial services"); Guscott Decl. ¶¶ 20–26. These allegations are sufficient to raise an issue of fact as to federal alter-ego liability.

The Funds also appear to seek to hold the Moving Defendants liable under a state-law alter-ego theory. Courts applying New York state law[8] will "pierce the corporate veil and hold a corporation's owners liable for . . . [that corporation's] acts when (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury."[9] *John Wiley & Sons, Inc. v. NICE Global LLC*, 2026 WL 880403, at *4 (S.D.N.Y. Mar. 31, 2026) (quoting *Morris v. N.Y. State Dep't of Tax'n & Fin.*, 82 N.Y.2d 135, 141 (1993)). As the Moving Defendants recognize, this determination is "fact-intensive." *Tactical Infrastructure*

---

[8] The parties do not brief the issue of what jurisdiction's law would apply to the Funds' state-law alter-ego theory of liability. Instead, by relying on New York law in their submissions, the parties consented to the application of New York law to this theory for the purposes of this Opinion and Order. *See Wm. Passalacqua Builders, Inc. v. Resnick Devs. S., Inc.*, 933 F.2d 131, 137 (2d Cir. 1991); *Cambridge Cap., LLC v. Ruby Has LLC*, 675 F. Supp. 3d 363, 416 (S.D.N.Y. 2023) ("A party may waive a choice of law argument or give implied consent sufficient to establish a choice of law when it assumes in its briefs that a particular jurisdiction's law applies."); *Krumme v. WestPoint Stevens, Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) ("The parties' briefs assume that New York law controls, and such implied consent is sufficient to establish choice of law.").

[9] Courts applying New York law consider a set of factors in assessing whether an individual or entity exercises complete domination over a corporation, including:

> (1) the absence of the corporate formalities[,] *i.e.*, issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arm's length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own.

*John Wiley & Sons, Inc.*, 2026 WL 880403, at *6 (quoting *Jabord, Inc. v. Beacon, LLC*, 2026 WL 696904, at *4 (S.D.N.Y. Mar. 12, 2026)).

*S.A. v. Apex Energy Alt. Res., Inc.*, 2025 WL 1919551, at *4 (S.D.N.Y. July 10, 2025); *see also City of Almaty v. Ablyazov*, 278 F. Supp. 3d 776, 799 (S.D.N.Y. 2017) (similar). Here, Washington has averred that, when he had "management/supervisory authority at Vanguard General and Vanguard Parking," he "always shared responsibilities and authority" with "two other officers." Washington Decl. ¶¶ 27–28. He further states that he always "respect[ed] all corporate formalities" and had never "taken or siphoned any corporate funds for . . . [his] own personal use." *Id.* ¶¶ 29, 31. And, as previously discussed, Washington and Guscott have provided evidence that Vanguard Parking and Long Bay are distinct entities from Vanguard General. *See id.* ¶¶ 13–23; Guscott Decl. ¶¶ 20–26. These statements, too, are sufficient to raise an issue of fact as to whether Washington dominated and controlled Vanguard General and Vanguard Parking, and whether Vanguard Parking and Long Bay dominated and controlled Vanguard General.

Finally, the Funds claim that Vanguard General, Vanguard Parking, and Long Bay are jointly liable under ERISA because they are a "single employer." Am. Compl. ¶¶ 46–58. Separate companies are considered a "single employer" if they "are actually part of a single integrated enterprise." *Trs. of United Health & Welfare Fund v. N. Kofsky & Son, Inc.*, 2013 WL 5356868, at *6 (S.D.N.Y. Sept. 26, 2013). "Courts consider several non-dispositive factors to determine if companies share a single employer: interrelation of operations, common management, centralized control of labor relations, and common ownership. Also relevant are the entities' use of common office facilities and equipment and family connections." *Ferrara v. Happy Time Trucking, LLC*, 436 F. Supp. 3d 606, 617 (E.D.N.Y. 2020) (quoting *Lihli Fashions Corp. v. NLRB*, 80 F.3d 743, 748 (2d Cir. 1996)). A finding that two entities are a "single employer" "is enough to hold them jointly and severally liable for each other's debts and obligations, including financial obligations under [a] collective bargaining agreement." *Lihli*, 80 F.3d at 748. Critically, though, for one entity

to be bound by another's collective bargaining agreement, a plaintiff must also show that both enterprises, taken together, represent "an appropriate employee bargaining unit." *Id.* at 747; *see also Ferrara v. Oakfield Leasing, Inc.*, 904 F. Supp. 2d 249, 261 (E.D.N.Y. 2012); *S. Prairie Constr. Co. v. Local No. 627*, 425 U.S. 800, 804–05 (1976) (per curiam). The same factual disputes relevant to the Funds' federal-law alter-ego theory of liability are thus applicable to their single-employer theory of liability.[10]

Accordingly, then, this factor also weighs in favor of vacating the default judgment as to all Moving Defendants.

## IV. Balancing the Factors

In sum, all three factors weigh in favor of vacating the default judgment as to the Moving Defendants. As a result, and in light of the strong policy favoring the resolution of disputes on the merits, the Court concludes that vacatur of the default judgment pursuant to Rule 60(b) is appropriate. *See, e.g.*, *Gilead Scis., Inc. v. Safe Chain Sols.*, 2026 WL 1899866, at *19 (E.D.N.Y. July 6, 2026) (similar); *Melo-Cordero v. Shaddai Transp. LLC*, 2023 WL 5016346, at *3–4 (S.D.N.Y. May 12, 2023) (similar).

[10] The Moving Defendants also argue that this theory of liability fails because "Vanguard General is defunct and has no employees." Def. Repl. at 8; *see N. Kofsky & Son, Inc.*, 2013 WL 5356868, at *7 ("Moreover, the single-employer rule implies that the companies involved must actively employ workers. In this case, however, one or both companies is defunct."). Washington states that Vanguard General "began the process of winding down its affairs" in "October 2019," and that he "oversaw" that "process." Dkt. 98, Ex. 11 ("Suppl. Washington Decl.") ¶¶ 12–13; *see* Washington Decl. ¶¶ 34–39. The Funds state that this is a "wild mischaracterization," and argue that other evidence shows that Vanguard General is a currently active and operating company. Pl. Opp'n at 10–11, 18. The Court cannot conclusively determine whether Vanguard General is "defunct," as Washington states, or "active and operating," as the Funds state, on the record before it. This is, therefore, yet another factual issue in dispute militating in favor of vacating the default judgment.

## CONCLUSION

For the foregoing reasons, the Moving Defendants' motion is granted. The default judgment previously entered in this matter at Docket Number 78 is vacated. The Clerk of Court is respectfully directed to terminate the motion pending at Docket Number 82.

SO ORDERED.

Dated: August 27, 2026
New York, New York

Ronnie Abrams
United States District Judge